# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**SCOTT A. WILLIAMS,**
                    **Plaintiff,**

    **v.**                                                                 **Case No. 06-C-819**

**RACINE COUNTY, ROBERT D. CARLSON,**
**WILLIAM GABBEY, JAMES SCHERFF,**
**DAVID WILLIS, WILLIAM BECKER,**
**DEPUTY VANDERVEST, NICHOLAS CAPUTA,**
**MICHAEL PAPARA, JOHN DOES and JANE DOES,**
                    **Defendants.**

---

## DECISION AND ORDER

Plaintiff Scott A. Williams, who is incarcerated at Racine Correctional Institution, filed this pro se civil rights action pursuant to 42 U.S.C. § 1983 regarding an incident that occurred while plaintiff was in the Racine County Jail ("RCJ"). Defendants are Racine County and various county officials and employees: Sheriff Robert D. Carlson; Chief Deputy William R. Gabbey; Captain James Scherff; Sergeant David Willis; Correctional Officer Michael Papara; and Deputies William Becker, Donald Vandervest and Nicholas Caputa. Plaintiff is suing the individual defendants in their individual and official capacities.[1] Plaintiff also named as defendants John Does and Jane Does, but, given that plaintiff has not identified such defendants after more than a year of discovery, I will dismiss them at this time. See Strauss v. City of Chicago, 760 F.2d 765, 770 n.6 (7th Cir. 1985).

---

[1]Defendants' assertion that "[a]ll of the other named defendants are being sued in their official capacities as Racine County employees," (Defendants' Proposed Findings of Fact ("DPFOF") at ¶ 5), is incorrect, (Compl. at 2).

On October 12, 2006, I permitted plaintiff to proceed in forma pauperis on claims of failure to train, excessive force, deliberate indifference to a serious medical need and denial of access to the courts. Before me is defendants' motion for summary judgment.

## I. FACTS

On October 26, 2005, at about 7:30 p.m., RCJ officials "locked down" the jail's 4B wing in order to inspect inmates' cells.[2] The officials instructed inmates to go to the "sally port" and sit on the floor. Defendants aver that all of the inmates complied with this request except plaintiff, who became agitated and disruptive and refused to sit down. Plaintiff counters that there was no room to sit down because the sally port was a very small area and he was the last one admitted to the area. Plaintiff eventually sat down, but defendants claim that plaintiff continued to be agitated and disruptive. Defendant Willis determined that plaintiff needed to be moved to prevent further disruption of the cell inspections.[3]

Defendants Becker, Caputa and Papara handcuffed plaintiff and escorted him away. Defendants allege that, during the escort, plaintiff threatened officers, used profanity, and twisted his arms and dropped his weight in an effort to break away from the officers. When they reached the first floor and exited the elevator, defendants aver that plaintiff successfully broke away from Becker and turned towards Papara in a threatening manner. Plaintiff disputes this account. He asserts that he was not agitated and did not threaten anyone. He

_____

[2]The facts in this section are taken from Defendants' Proposed Findings of Fact and the affidavits to which it refers, and from plaintiff's sworn complaint and attached affidavits. See Ford v. Wilson, 90 F.3d 245, 246 (7th Cir. 1996).

[3]Plaintiff disputes this proposed fact and asserts that there was no disruption whatsoever to any cellblocks even if he was standing. (Pl.'s Dispute at ¶ 3.) However, plaintiff's "dispute" is not properly supported by evidence in the record and therefore, this proposed fact is deemed undisputed. See Fed. R. Civ. P. 56(e).

claims that it was the officers who bent plaintiff's wrist, causing such extreme pain that plaintiff nearly passed out. Plaintiff further states that he did not break away; rather, the officers released plaintiff as he was passing out.

At this point, a scuffle ensued. According to defendants, the officers attempted to arrest plaintiff but plaintiff resisted them, thus they had to use physical force to subdue plaintiff.[4] According to plaintiff, Willis, Becker, Caputa and Papara punched, kicked and kneed him, though he complied with all of their orders. Defendants then escorted plaintiff to RCJ's medical office. They aver that plaintiff continued to be verbally assault the staff on the trip, but plaintiff disputes this. An RCJ nurse examined plaintiff, after which defendant Vanderveen took plaintiff to St. Mary's Hospital in Racine, Wisconsin, for treatment of a laceration above his right eye. Plaintiff also had shoulder and back pain.

The parties dispute whether plaintiff received appropriate medical attention after his initial treatment at St. Mary's. Defendants assert that each time plaintiff submitted an inmate request for medical attention afterwards, plaintiff was either examined by a doctor, received medication or both. However, plaintiff asserts that hospital staff prescribed him pain medication and that he repeatedly asked jail staff for it, but no one ever gave him anything. Plaintiff asserts that defendants, particularly Vanderveen, refused to give him medical attention for at least three days, when the pain was at its worst. RCJ records indicate that plaintiff was prescribed and given Tylenol on at least one occasion, but do not describe any medical attention beyond that, and plaintiff disputes that he received even Tylenol.

---

[4]Ultimately, plaintiff was arrested for disorderly conduct and resisting an officer.

3

Finally, plaintiff asserts that, after the above incident, RCJ refused to provide him with access to a law library and medical records, preventing him from bringing suit in state court.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is required "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c). The mere existence of some factual dispute does not defeat a summary judgment motion; "the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  For a dispute to be genuine, the evidence must be such that a "reasonable jury could return a verdict for the nonmoving party."  Id.  For a fact to be material, it must relate to a matter that "might affect the outcome of the suit."  Id.

The moving party bears the initial burden of demonstrating that he is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  When the moving party seeks summary judgment on the ground that there is an absence of evidence to support the non-moving party's case, the moving party may satisfy his initial burden simply by pointing out the absence of evidence.  Id. at 325.  Once the moving party's initial burden is met, the nonmoving party must "go beyond the pleadings" and designate specific facts to support each element of the cause of action, showing a genuine issue for trial.  Id. at 322-23.  Neither party may rest on mere allegations or denials in the pleadings, Anderson, 477 U.S. at 248, or upon conclusory statements in affidavits, Palucki v. Sears, Roebuck & Co., 879 F.2d 1568, 1572 (7th Cir. 1989).  In considering a motion for summary judgment, the court may consider any materials that would be admissible or usable at trial, including properly authenticated and admissible documents.  Woods v. City of Chicago, 234 F.3d 979,

4

988 (7th Cir. 2000). It must draw all inferences in a light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, the court is "not required to draw every conceivable inference from the record – only those inferences that are reasonable." Bank Leumi Le-Israel, B.M. v. Lee, 928 F.2d 232, 236 (7th Cir. 1991).

Although summary judgment is a useful tool for isolating and terminating factually unsupported claims, Celotex Corp., 477 U.S. at 323-24, courts should act with caution in granting summary judgment, Anderson, 477 U.S. at 255. When the evidence presented shows a dispute over facts that might affect the outcome of the suit under governing law, the court must deny summary judgment. Id. at 248.

### III. ANALYSIS

Defendants assert that plaintiff has not stated a claim of excessive force, medical indifference or access to the courts.[5] In addition, they raise the defense of qualified immunity. I will address each of these issues in turn.

### A. Constitutional Violation

#### 1. Excessive Force Claim

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" on prisoners. Hudson v. McMillian, 503 U.S. 1, 5 (1992). In cases involving the use of force, the question is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7. Factors in determining

---

[5]Defendants do not present any argument regarding plaintiff's failure-to-train claim against Racine County and its officials. Presumably, they assume that if I conclude that none of the defendants violated plaintiff's rights in their individual capacities, then I will also find that plaintiff's failure-to-train claim fails and dismiss his entire case.

5

whether the use of force was wanton and unnecessary include "the need for an application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" Id. (quoting Whitley v. Albers, 475 U.S. 312, 321 (1986)).

Often circumstances require prison officials to balance the need "to maintain or restore discipline" using force at the risk of injury to inmates. Hudson, 503 U.S. at 6. Both situations require officials to act quickly and decisively, thus "[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Id. (internal citations and quotations omitted.)

In the present case, there are significant differences between plaintiff's and defendants' versions of the facts. The parties agree that plaintiff initially failed to sit down in the sally port but, after defendant Willis found him a place to sit down, he did so. They further agree that several defendants then led plaintiff away in handcuffs. However, after that, their stories diverge. Defendants assert that plaintiff was agitated and verbally assaultive, that plaintiff attempted to escape from them and threatened Papara, and that officials used only the force necessary to subdue him. Plaintiff contends that he was compliant with all of the officers' orders, and that Willis, Becker, Caputa and Papara beat him while he was handcuffed and without provocation. In addition to his own sworn statement, plaintiff has presented affidavits of other inmates, attached to his complaint, backing up plaintiff's version of the incident. This dispute cannot be resolved via summary judgment. If a fact finder accepted plaintiff's version of the facts, it could infer that

defendants acted with malicious intent and thus violated the Eighth Amendment.  See Hill v. Shelander, 992 F.2d 714, 717 (7th Cir. 1993).

**2.      Medical Indifference Claim**

To establish liability under the Eighth Amendment for a claim of indifference to a serious medical need, a prisoner must show: (1) that his medical need was objectively serious and (2) that the official acted with deliberate indifference to the prisoner's health or safety.  Farmer v. Brennan, 511 U.S. 825, 834 (1994); Chapman v. Keltner, 241 F.3d 842, 845 (7th Cir. 2001); see also Estelle v. Gamble, 429 U.S. 97, 104-05 (1976); Zentmyer v. Kendall County, Ill., 220 F.3d 805, 810 (7th Cir. 2000).

A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  Wynn v. Southward, 251 F.3d 588, 593 (7th Cir. 2001) (quoting Gutierrez v. Peters, 111 F.3d 1364, 1373 (7th Cir. 1997)).  Factors that indicate a serious medical need include "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain."  Gutierrez, 111 F.3d at 1373 (citations omitted).  A medical condition need not be life-threatening to qualify as serious, so long as the denial of medical care could result in further significant injury or in the unnecessary infliction of pain.  See Reed v. McBride, 178 F.3d 849, 852-53 (7th Cir. 1999); Gutierrez, 111 F.3d at 1371.

A prison official acts with deliberate indifference when "the official knows of and disregards an excessive risk to inmate health or safety."  Farmer, 511 U.S. at 837.  Prison officials act with deliberate indifference when they act "intentionally or in a criminally reckless

7

manner." <u>Tesch v. County of Green Lake</u>, 157 F.3d 465, 474 (7th Cir. 1998). Neither negligence nor even gross negligence is a sufficient basis for liability. <u>See</u> <u>Salazar v. City of Chicago</u>, 940 F.2d 233, 238 (7th Cir. 1991). A finding of deliberate indifference requires evidence "that the official was aware of the risk and consciously disregarded it nonetheless." <u>Chapman v. Keltner</u>, 241 F.3d 842, 845 (7th Cir. 2001) (citing <u>Farmer</u>, 511 U.S. at 840-42).

In the present case, the Emergency Department Report indicates the following summary of plaintiff's course of treatment:

> EMERGENCY DEPARTMENT COURSE: The wounds were closed by Nicole Degrado, physician assistant. Please refer to my procedure not for summary of this. The patient was allegedly assaulted with loss of consciousness and has definite trauma to the head. The CT scans were done to confirm that there was no intra cranial injury or fracture. The patient was initially given a gram of Tylenol for pain and then Ultram later which he will be sent home with. He states last tetanus was in 2000, so he is up-to-date. He is given head trauma instructions, wound care sheet. He is to get sutures out in four to five days and he is to have wound check in about 24 hours by the personal physician or be the personal medical staff. He can ice the affected areas if possible and return for any sign of raccoon eyes. Clear fluids. No other concerns besides the potential basilar skull fracture, which I did not see any evidence of at this point.

(Compl. Ex. 8.) Plaintiff avers that jail officials refused to give him the prescribed pain medication, Ultram, in the days immediately following his injury, when the pain was at its worst. Defendants do not deny this, except in conclusory fashion. They have submitted three requests by plaintiff for medical attention regarding pain, asserting that such requests show that they were not deliberately indifferent to his pain. However, the first request contains a notation that a nurse made an order for Tylenol, the second contains no indication that medical personnel even looked at it and the third contains only incomprehensible scribble at the bottom which defendants have not explained.

8

Prison officials may not substitute their judgment for a medical professional's prescription.  Zentmyer v. Kendall County, Ill., 220 F.3d 805, 812 (7th Cir. 2000) (citing Ralston v. McGovern, 167 F.3d 1160, 1162 (7th Cir. 1999); Johnson v. Hay, 931 F.2d 456, 461 (8th Cir. 1991)).  If a prison official consciously chooses to disregard a nurse or doctor's directions in the face of medical risks, then he may well have exhibited the necessary deliberate indifference.  Zentmyer, 200 F.3d at 812.  In Walker v. Benjamin, 293 F.3d 1030, 1040 (7th Cir. 2002), the court held that the validity of a prison doctor's stated explanation for refusing to dispense narcotic pain reliever prescribed by an outside physician was a question for the jury to decide.  The court reasoned that the prisoner "was not seeking an expensive or unconventional treatment; he just wanted the pain medication that the prison doctor had prescribed for him."  Id.  The defendants' deliberate refusal of it was a "gratuitous cruelty."  Id. (quoting Ralston v. McGovern, 167 F.3d 1160, 1162 (7th Cir. 1999)).

On the present record, I cannot conclude that defendants were not deliberately indifferent to plaintiff's serious medical need and thus will deny defendants' motion for summary judgment as to this claim.

### 3.     Access-to-the-Courts Claim

It is well established that prisoners have a constitutional right of access to the courts.  Bounds v. Smith, 430 U.S. 817, 821 (1977).  This right "requires prison authorities to assist inmates in preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."  Id. at 828.

To prevail on an access-to-the-courts claim, an inmate must show that the prison hindered in his efforts to pursue a particular legal claim.  See Lewis v. Casey, 518 U.S. 343, 351 (1996); see also Alston v. DeBruyn, 13 F.3d 1036, 1040-41 (7th Cir. 1994) (holding that

inmate must establish (1) the failure of prison officials to assist in the preparation and filing of meaningful legal papers and (2) some quantum of detriment caused by the challenged conduct).  Even if the inmate can establish an "absolute deprivation of access to all legal materials," his claim will fail absent identification of some injury linked to the deprivation. Lewis, 518 U.S. at 353 n.4.  To establish injury an inmate need not show that if he had been provided with adequate legal facilities he would have prevailed in a lawsuit.  Walters v. Edgar, 163 F.3d 430, 434 (7th Cir. 1998); see also Hoard v. Reddy, 175 F.3d 531, 533 (7th Cir. 1999).  Rather, he need only show that he was prevented "from litigating a nonfrivolous case."  Walters, 163 F.3d at 434.

With respect to his access to the courts claim, plaintiff avers as follows:

> After I was let out of the hole, I asked several times to use the law library to learn what I needed to do to file a suit against the jail, I also wanted to file a writ on my ticket.  The jail said I needed a case number.  The jail was just deny [sic] me access to the courts and so I would run out of time to file in a state court.  I never got a chance to use the library or was I told that my grievance was decided until after the time limits ran out in the state courts.

(Compl. at 5.)  Defendants argue that plaintiff's ability to file his case in state court is not an injury giving rise to an access-to-the-courts claim because plaintiff was able to file his case in federal court.  I presume, for now, that denying a plaintiff access to his preferred forum would be sufficient to support an access-to-the-courts claim.  However, I will dismiss plaintiff's claim because, as a matter of law, plaintiff's available claims regarding the subject matter of this lawsuit are coexistent in state and federal court.  See Felder v. Casey, 487 U.S. 131, 151 (1988).  Thus, if there were any "time limits" that "ran out" in state court, they would have also ran here.  Given that defendants have not raised a statute of limitations

10

defense here, I must find that plaintiff's belief that he could not bring his case in state court is simply inaccurate.

## B.    Qualified Immunity

When government officials perform discretionary functions, they are entitled to a qualified immunity defense that shields them from damages liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In assessing whether qualified immunity is applicable, the court must address two questions: 1) whether the plaintiff has asserted a violation of a constitutional rights, and 2) whether the applicable constitutional standards were clearly established at the time in question.  Levenstein v. Salafsky, 164 F.3d 345, 351 (7th Cir. 1998); Erwin v. Daley, 92 F.3d 521, 525 (7th Cir. 1996).  I have already determined that plaintiff has asserted a violation of his Eighth Amendment rights, thus I turn to defendants' argument that plaintiffs' excessive force claim is not based on clearly established law.

In order to be "clearly established," the contours of a right asserted must be sufficiently clear that a reasonable official would understand that what he or she is doing violates that right.  Anderson v. Creighton, 483 U.S. 635, 640 (1987).  However, a plaintiff need not show that the very action in question has previously been held unlawful.  Id.  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Saucier v. Katz, 533 U.S. 194, 202 (2001) (citing Wilson v. Layne, 526 U.S. 603, 615 (1999)).  In the present case, defendants argue that plaintiff "must produce some authority indicating that an inmate's Eighth Amendment rights are violated when a

11

threatening and aggressive inmate instigates an altercation, refuses direct orders from jail officers, and is then physically restrained to force compliance with officers' orders." (Defs.' Br. in Support at 14.)  However, I must consider the qualified immunity question under plaintiff's version of the facts.  See Saucier, 533 U.S. at 201.  Doing so, it is clear that in October 2005, a reasonable officer would have known that physically assaulting a non-resisting, handcuffed inmate such that the inmate is required to obtain emergency room care, would violate the Constitution.  See Hill, 992 F.2d at 715, 718-19.  Accordingly, defendants are not entitled to qualified immunity on plaintiff's excessive force claim. Defendants have not argued that plaintiff's other claims fail under the second prong of the qualified immunity test.

## IV.  CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that defendants' motion for summary judgment is **GRANTED** with respect to plaintiff's claim that he was denied access to the courts and **DENIED** with respect to plaintiff's remaining claims.

**IT IS FURTHER ORDERED** that a telephonic status conference, to discuss future proceedings, will be held on **March 26, 2008 at 3 p.m.**  The court will initiate the call.

**IT IS FURTHER ORDERED** that defendants "John Does and Jane Does" are dismissed from this action.

Dated at Milwaukee, Wisconsin, this 27 day of February, 2008.

/s                                                  
LYNN ADELMAN

12

District Judge

13